IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HORIZON/CMS HEALTHCARE CORPORATION,
a Delaware corporation; and CONTINENTAL
MEDICAL SYSTEMS, INC., a Delaware
corporation,

    Plaintiffs,

vs.              No. CIV 97-979 MV/DJS

ROCCO ORTENZIO; and
SPORTS & ORTHOPEDIC REHABILITATION
SERVICES, INC.,  a Florida corporation,

    Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

  **THIS MATTER** is before the Court on the Motion of Defendant Rocco A. Ortenzio to

Dismiss for Lack of Jurisdiction and Improper Venue, filed October 20, 1997 **[Doc. No. 15]**, and the

Motion of Defendants Select Medical Corporation and Sports & Orthopaedic Rehabilitation Services,

Inc. to Dismiss for Lack of Jurisdiction and Improper Venue, filed September 19, 1997

**[Doc. No. 5]**.  Following a Rule 41 voluntary dismissal by Plaintiffs of Select Medical Corporation

**[Doc. No. 4]** that entity is no longer part of this litigation.  <u>See</u> Fed. R. Civ. P. 41(a).  The Court,

having considered the pleadings and relevant law and being otherwise fully informed, finds that

neither motion is well taken and both will be **denied**.

  In this diversity action, Plaintiffs assert that pursuant to a 1995 merger between Horizon

Healthcare and Continental Medical Systems that created Horizon/CMS, Defendant Ortenzio, who

at the time was the Chief Executive Officer of CMS, entered into a consulting agreement with

Horizon that included an agreement not to compete.   In addition, there is no dispute that in  1992, prior to the merger Mr. Ortenzio borrowed funds from CMS in order to purchase its stock and executed two promissory notes in Pennsylvania in favor of CMS in the aggregate amount of $4,548,287.50.   Plaintiffs claim that Defendants both breached the consulting agreement and defaulted on the promissory notes.

Plaintiffs further claim that Mr. Ortenzio, through Defendant Sports and Orthopaedic Rehabilitation Services, Inc. which he controls, has breached the agreement not to compete by establishing competing businesses within 20 miles of facilities run by Rehabworks, a subsidiary of Horizon/CMS, and by recruiting eleven employees away from Rehabworks.   According to Horizon/CMS, those employees have taken with them trade secrets and proprietary information  and attempted to solicit clients away from Rehabworks.

### Discussion

A plaintiff bears the burden of establishing personal jurisdiction over a defendant.  Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985).  Yet at this early stage of the litigation, "the plaintiff's burden is light."  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).  The Court resolves all factual disputes in a plaintiff's favor, and to survive jurisdictional dismissal a plaintiff need only make a prima facie showing that jurisdiction lies, which shall be sufficient "notwithstanding the contrary presentation by the moving party."  Behagen, 744 F.2d at 733.   A plaintiff's mere conclusory allegations, however, when contested by a defendant's affidavits are not enough.  Wenz, 55 F.3d at 1505.

2

I.      Defendant Ortenzio's motion

Defendant Rocco Ortenzio has alleged here three grounds for dismissal.  First, Mr. Ortenzio argues that complete diversity is lacking in this case, since both he and Plaintiff CMS are citizens of Pennsylvania.  Next Mr. Ortenzio contends that venue is improper in this District, and finally, Mr. Ortenzio states that the Court does not have personal jurisdiction over him.

Horizon/CMS has averred that through a merger in 1995 CMS became a wholly-owned, consolidated subsidiary company of Horizon/CMS.  Through the affidavit of its Vice President of Legal Affairs Scot Sauder, Horizon/CMS explains that Mr. Ortenzio traveled several times from Pennsylvania to New Mexico to negotiate the Horizon and CMS merger, that Mr. Ortenzio became a Horizon/CMS director and officer pursuant to the merger and the consulting agreement, traveling to New Mexico on occasion both to participate in Horizon/CMS business and to provide consulting advice pursuant to the terms and provisions of the agreement.  Mr. Sauder affirms that Mr. Ortenzio made numerous telephone calls to New Mexico because of his association with Horizon/CMS, during which he provided consulting services pursuant to the consulting agreement.  Although Horizon/CMS admits that it does not provide health care services in New Mexico, Mr. Sauder states that CMS's corporate accounting, legal support, benefits administration, human resources, purchasing and construction, general ledger accounting, accounts payable processing, payroll and payroll-related processing, telecommunications management, all Medicare and Medicaid cost reports, Medicare and Medicaid reimbursement support and information systems management are each based and conducted in New Mexico.  Moreover, when Horizon and CMS merged, the merger documents clearly indicated that Horizon/CMS would be headquartered in Albuquerque.

Mr. Ortenzio claims that the CMS merger and the consulting agreement were two separate

3

and distinct occurrences, and that although he transacted business in New Mexico he did so only as a Horizon/CMS director, and never provided consulting services in New Mexico.  Mr. Ortenzio, then, disputes Mr. Sauder's affidavit.

Turning first to the issue of personal jurisdiction, the Court notes that it has jurisdiction over Mr. Ortenzio provided that he would be subject to jurisdiction in the State of New Mexico's courts. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990), cert. denied, 498 U.S. 1068 (1991).  Personal jurisdiction exists in New Mexico for non-resident defendants if they have committed one of the acts enumerated in the state's long-arm statute, N.M. Stat. Ann. 38-1-16 (Michie 1987), the cause of action arises from those acts, and they have sufficient minimum contacts with the state to satisfy constitutional requirements.  Martin v. First Interstate Bank of California, 914 F. Supp. 473, 475 (D. N.M. 1995).  The New Mexico Supreme Court has construed the state's long-arm statute as extending the exercise of personal jurisdiction as far as is constitutionally permissible.  Federal Deposit Insurance Corporation v. Hiatt, 872 P.2d 879, 881 (N.M. 1994).  Because of this contiguity between the long-arm statute and constitutional requirements, a personal jurisdiction analysis in New Mexico collapses into a "single search for the outer limits of what due process permits."  Id., quoting Forsythe v. Overmyer, 576 F.2d 779, 782 (9th Cir. 1978), cert. denied, 439 U.S. 864 (1978).  The issue before the Court, then, is whether Mr. Ortenzio has sufficient contacts with New Mexico such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

While in order for jurisdiction to lie it is necessary that a defendant should reasonably anticipate being haled into court in a forum, World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980), the search for minimum contacts is not merely a foreseeability analysis.  Id.; Trierweiler

4

v. Croxton and Trench Holding Corp., 90 F.3d 1523, 1534 (10th Cir. 1996).  Rather, a court must look to whether a defendant purposefully availed itself of the benefits and protections of that forum's laws.  Hanson v. Denckla, 357 U.S. 235 (1958); see also Hiatt, 872 P.2d at 882.  Stated another way, this purposeful availment requirement ensures that "a defendant will not be haled into a jurisdiction as a result of another party's unilateral acts."  Trierweiler, 90 F.3d at 1534, citing Burger King v. Rudzewicz, 471 U.S. 462, 474-75 (1984).

Jurisdictional issues are ones "in which few answers will be written in black or white[;] [t]he greys are dominant and even among them the shades are innumerable," Kulko v. California Superior Court, 436 U.S. 84, 92 (1978), yet the facts as Plaintiffs aver them lead the Court to conclude that it has jurisdiction over Mr. Ortenzio.  Mr. Ortenzio personally came to New Mexico to conduct a due diligence investigation and negotiate CMS's merger with Horizon.  As part of that merger, Mr. Ortenzio agreed to become a consultant to Horizon/CMS and not to compete with the merged corporation.  Clearly, then, Mr. Ortenzio transacted business in New Mexico.  Moreover, Mr. Ortenzio's actions meet the test of being extensive, systematic, and continuous.  Mr. Ortenzio came to New Mexico in March, 1995 to negotiate the merger between Horizon and CMS.  He was a director of the merged corporation and the Vice-Chairman of its board from July, 1995 until his resignation effective September 9, 1995, and attended a meeting of its board of directors.  He provided consulting services, sometimes telephonically with Albuquerque officers and employees of Horizon/CMS, for which he accepted $50,000 per year for two years.  Accordingly, Mr. Ortenzio, while a nonresident of the State of New Mexico, is subject to its general jurisdiction.  See Visarraga v. Gates Rubber Co., 717 P.2d 596, 601 (N.M. Ct. App. 1986).

Looking next to the issue of venue, the Court finds that venue is proper in the District of New

5

Mexico.  Because the present litigation is founded solely on diversity, venue is proper only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (1998).

Mr. Ortenzio states that any breaches of the agreement not to compete occurred if at all only in

Florida, and that his breach of the promissory notes, if it occurred, happened outside New Mexico.

Mr. Ortenzio then contends that these acts are a substantial part of the events giving rise to this

action, and that conversely no substantial part of the events underlying Plaintiffs' claims occurred

here.  Mr. Ortenzio thus implies that venue can only be proper in one district.  Plaintiffs provide only

a cursory answer.

The language of § 1391(a) is not as narrow in its meaning as Mr. Ortenzio suggests.  See

Cottam Transmission Systems, Inc. v. Martino, 36 F.3d 291, 294 (3rd Cir. 1994).  The alleged failure

to abide by an agreement not to compete, negotiated in part here in New Mexico, and the alleged

breach of the obligation to repay a loan of several million dollars made by a corporation who is now

a wholly owned subsidiary of a New Mexico corporation both have economic consequences and an

impact in this district.  See General Latex & Chemical Corp. v. Phoenix Medical Technology, Inc.,

765 F. Supp. 1246, 1251 (W.D. N.C. 1991); Neufeld v. Neufeld, 910 F. Supp. 977, 986 (S.D. N.Y.

1996).  The venue statute does not require that there be the most substantial contacts in New Mexico;

it is enough that there be substantial contacts here, even if more events occurred elsewhere.  Id.

There are no diversity impediments to this action in this Court.  Corporations, of course, are

deemed to be citizens not only of states where incorporated but also of states where they have their principal place of business.  28 U.S.C. § 1332(c)(1) (1998).  The Tenth Circuit holds "that the determination of a corporation's principal place of business does not hinge on one particular facet of corporate operations, but on the total activity of the company considered as a whole."  Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 915 (10th Cir. 1993), cert. denied, 510 U.S. 1112 (1994).  Courts must balance a variety of factors on a case by case basis, including "the location of the corporation's nerve center, administrative offices, production facilities, [and] employees."  Id. Therefore, while Plaintiffs urge the Court to apply the "nerve center" test to determine CMS's principal place of business, the Court looks to the totality of the corporate circumstances in its § 1332 determination.

Although CMS does not provide any patient care in New Mexico, it has substantial operations here, including its corporate accounting, human resources, information systems management, purchasing and construction, and Medicare and Medicaid cost and reimbursement support.  CMS's nerve center and administrative offices therefore, appear to be in New Mexico, although some of  its "production facilities" are not.  Moreover, it has employees in New Mexico, cf. Amoco, 7 F.3d at 916, and five of its eleven senior officers reside in Albuquerque, as well as three of its directors, including the chairman of its parent company, Horizon/CMS.  Press releases issued at the time of the merger showed that both Horizon and CMS intended CMS to become headquartered in Albuquerque. Thus, while there is undisputably a strong presence outside of New Mexico as a result of the merger, the Court finds that on balance CMS's principal place of business is in this state.  Diversity jurisdiction lies.

II.  Sports & Orthopaedic Rehabilitation Services, Inc.'s motion

Sports & Orthopaedic urges the Court to dismiss based on lack of personal jurisdiction, pointing through affidavits to the total absence of contacts between Sports & Orthopaedic and the State of New Mexico.  Plaintiffs, acknowledging in their complaint that Sports & Orthopaedic is a Florida corporation with its principal place of business in Florida, nevertheless claim that Mr. Ortenzio treats Sports & Orthopaedic as his instrumentality and urge the Court to permit discovery to determine the relationship between Mr. Ortenzio and Sports & Orthopaedic.  Plaintiffs also seek to discover the extent of Sports & Orthopaedic's contact with this forum, if any.

Even if Mr. Ortenzio were the alter ego of Sports & Orthopaedic, the Court would not have personal jurisdiction over Sports & Orthopaedic without more.  Home-Stake Production v. Talon Petroleum, C.A., 907 F.2d 1012, 1021 (10th Cir. 1990).  In Home-Stake, a case directly on point, the court explained that

> [t]he dominated corporation does not direct and control its dominating corporate or individual alter ego.  Accordingly, it is unfair to impute to the dominated corporation the forum contacts of the alter ego... [A dominated corporation has], as much as any other defendant, a constitutionally protected liberty interest in "not being subject to the binding judgments of a forum with which [it has] established no meaningful contacts, ties, or relations.

Id., quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985).

Thus, while sometimes a court may fairly impute to an alter ego the contacts of the corporation he dominates, the reverse is not possible.  Home-Stake, 907 F.2d at 1020-21.  This Court can not assert jurisdiction over Sports & Orthopaedic absent the constitutional minimums of due process.  Because Plaintiffs are entitled to discovery on the issue of jurisdiction, however, and because discovery in this case will not close until August 21, 1998, the Court will order discovery to take place solely on the

jurisdictional issue, if it has not already occurred.  At the conclusion of this discovery, Sports &
Orthopaedic may revisit this issue.

      **THEREFORE,**

      **IT IS HEREBY ORDERED,** that the Motion of Defendant Rocco A. Ortenzio to Dismiss
for Lack of Jurisdiction and Improper Venue, filed October 20, 1997 **[Doc. No. 15]**, be, and hereby
is, **denied**, and that the Motion of Defendant Sports & Orthopaedic Rehabilitation Services, Inc. to
Dismiss for Lack of Jurisdiction and Improper Venue, filed September 19, 1997 **[Doc. No. 5]** be, and
hereby is, **denied without prejudice**.

      **IT IS FURTHER ORDERED** that the parties engage in discovery, if they have not already
done so, focusing on the contacts, if any, that Sports & Orthopaedic Rehabilitation Services, Inc. may
have had with New Mexico.

                                                                   _____
                                                                 MARTHA VÁZQUEZ
                                                               UNITED STATES DISTRICT JUDGE

July 22, 1998


Counsel for Plaintiffs                          Counsel for Defendants Ortenzio, Select Medical
                                         and Sports & Orthopaedic
David V. Halliburton , Esq.               Andrew S. Montgomery , Esq.
Paul G. Bardacke , Esq.                  Victor R. Ortega , Esq.
John M. Eaves , Esq.                     John Sullivan , Esq